503 So.2d 913 (1987)
FLAGSHIP BANK OF ORLANDO, Appellant,
v.
REINMAN, HARRELL, SILBERHORN, MOULE & GRAHAM, P.A., et al., Appellees.
No. 86-210.
District Court of Appeal of Florida, Fifth District.
January 29, 1987.
Rehearing Denied March 9, 1987.
James E. Alderman, Marguerite H. Davis, Christopher R. Kay, of Swann & Haddock, P.A., Tallahassee, for appellant.
Joan H. Bickerstaff, Melbourne, for appellee Reinman, Harrell, Silberhorn, Moule & Graham, P.A.
James A. Moreland, Joan J. Wood, of Moreland, Palmer & Marlowe, Winter Park, for appellee Hugh M. Palmer, Trustee.
COWART, Judge.
This case involves (1) a trustee's duty to protect from loss by tax sale real property which, while not included in an express trust agreement, is being claimed as a trust asset by the trustee in pending litigation; (2) the application of the statute of limitations in an action on behalf of beneficiaries against an alleged negligent trustee; and (3) the measure of damages when real property is lost to the trust because of the trustee's negligence.
In 1967 certain promoters had a "nominee" purchase a certain parcel of land (the Litt Tract) lying on both sides of State Road 530 (U.S. 192) in Osceola County, Florida, near Disney World. The promoters then commenced offering and selling to the public units of beneficial interest in a land trust known as "660 on 530 Trust". A formal express land trust for the beneficial owners was created. For $26,000 more than was paid by the promoters for the whole tract, the promoters' nominee conveyed to the trust the Litt tract less the east 100 feet thereof which was retained by and for the benefit of the promoters.
In 1970 the same promoters had another "nominee" purchase two more parcels (the Padawer Tract II and the Dudley Wilson *914 Tract) near the Litt Tract. Again the promoters commenced offering and selling to the public units of beneficial interest in a land trust known as "300 on 530 Trust" and a formal express land trust was created. For $550,000 more than the promoters paid for both tracts, the promoters' nominee conveyed to the trustee both parcels except about 80 acres of the Dudley Wilson Tract which was retained by and for the promoters.
In 1971, the Securities Exchange Commission filed an action alleging securities law violations against the promoters, the trustee, and others. In this action a receiver was appointed for the trusts.
In 1973, Trust Company of Florida, as successor trustee under the express trust agreement and as court appointed receiver, filed a separate action in federal court against the promoters alleging fraud and deceit and seeking to have those portions of the Litt Tract and the Dudley Wilson Tract that were retained by the promoters conveyed to the trusts.
In 1974, 1975, and 1976, no one paid county ad valorem taxes on the land retained by the promoters, and tax certificates were issued.
In 1976, the SEC amended the complaint in its action asking also that the promoters give up the land they had retained and withheld from the trust.
In early 1977, appellant, Flagship Bank of Orlando, was appointed trustee and receiver succeeding Trust Company of Florida and was also substituted as plaintiff in the trust action originally filed in 1973.
The holders of the tax certificates applied for tax deeds on part of the retained property and a tax deed sale was set for noon on July 6, 1977 at the courthouse in Kissimmee, Florida.
About thirty days before the tax deed sale, and again about seven days before the tax deed sale, some of the promoters talked with the trust officer of Flagship about the tax deed sale. On July 5, 1977, a stay order was entered in the trust action originally filed in 1973, and on the afternoon of July 5, 1977, the Flagship trust officer talked to the Flagship attorney about the tax deed sale to occur the next day. At 10:00 o'clock a.m. on July 6, 1977, Flagship's attorney presented to the federal district judge in Orlando, Florida, a motion to restrain and enjoin the tax deed sale or, alternatively, for authority to redeem the tax certificates. The federal judge declined to enjoin the tax deed sale but authorized Flagship to redeem the tax certificates. Flagship's attorney and trust officer made it to Kissimmee, Florida, before the tax deed sale occurred. For reasons not clear, they qualified Flagship as a bidder instead of redeeming the tax certificates, and then did not bid above the amount authorized by the federal judge to be expended for redemption of the tax certificates. A portion of the retained property was sold to third parties and never redeemed.
In July, 1978, Flagship was removed as receiver and on January 1, 1979, was succeeded as trustee by appellee Reinman, Harrell as to the "660 on 530 Trust," and by appellee Palmer as to the "300 on 530 Trust."
On January 28, 1982, the federal judge in the SEC action ruled that the trusts were entitled to that portion of the property originally retained by the promoters which had not been lost by tax deed sale.
In December, 1982, and January, 1983, the successor trustees filed actions against Flagship alleging in effect that Flagship was negligent as trustee when it failed to prevent portions of the property retained by the promoters and sought to be recovered by the trusts from being lost at the tax deed sale. After a non-jury trial, the trial court found in favor of the trustees and against Flagship awarding Reinman, Harrell, as trustee for the "660 on 530 Trust," $67,726, and Palmer, as trustee for the "300 on 530 Trust," $390,025.05.
Three positions asserted by Flagship at trial and rejected by the trial court are presented as points on appeal.
First, Flagship argues that its duties as trustee of an express trust are to be defined within the four corners of the trust document and that because the property lost for taxes was not part of the property *915 described in the trust agreement, it had no duty to protect that property from being lost for taxes. The trial court rejected this argument and so do we. Flagship as trustee was contending in a pending law action that the retained property was, in equity, part of the trust property and in law should be held to be trust property.
All of the duties of a trustee of an express trust are not included in the trust agreement. The duty that the law places on all citizens to use due care to prevent injury and damage to others, which is embodied in the tort law of negligence, also applies to trustees. The trusts were ultimately held to be entitled to the identically situated retained property that was not lost for taxes. If the property retained by the promoters were trust property, as Flagship, as trustee and receiver, was asserting in a pending law suit, then, while it was trustee, Flagship owed a duty to use due care to prevent such property from being lost at tax sale pending a final judicial determination of the question. Flagship makes several arguments based on comments that the federal judge made to counsel as to the relationship between the SEC action and the separate action filed by the trust in 1973. Flagship argues that because of the SEC action, the trustee of the express trust had no duties to redeem the land in question from the tax deed sale. Flagship's trust duties in this case are defined by state law relating to reasonable care by a trustee to protect from loss property claimed by the trustee to be trust property. Trial judges make law in a particular case only when they make rulings on issues properly presented in a case in which they have jurisdiction. Random comments or gratuitous advice given by trial judges, like dicta in appellate decisions, is only as good as it is correct; it is not law. Flagship's last minute efforts to redeem the property evidence that it recognized and undertook a duty to protect the property from loss at tax sale and the negligence of its agents in that undertaking are so obvious as not to be arguable and, in fact, are not even presented as a point by Flagship on appeal.
Second, Flagship argues that the applicable four year statute of limitations (§ 95.11(3)(c), Fla. Stat. (1981)) barred these actions against it because they were not filed until December, 1982, and January, 1983, and its alleged negligence occurred on January 6, 1977. Flagship cites authority to the effect that the statute of limitations on negligence actions commences to run when there is notice of the negligent act[1] and that a breach of trust duty may give rise to a cause of action against which the statute of limitations can run when the trust beneficiary knows of the breach or through the exercise of reasonable diligence could have known of it. Flagship also argues that the beneficial interest owners were on notice of the loss of the retained property at the tax deed sale at least prior to April, 1978. The present trustees (appellees) argue (1) that trust beneficiaries have no duty to acquire knowledge of a trustee's negligence, (2) that statutes of limitations for causes of actions against trustees for breach of duty do not begin to run until repudiation of the trust by the trustee and knowledge of the repudiation by the trust beneficiaries, and (3) that the mere termination of the trustee's duties does not constitute a repudiation of the trust, citing Anderson v. Northrop, 30 Fla. 612, 12 So. 318 (1892); Smith v. Reddish, 113 Fla. 20, 151 So. 273 (1933); Rackley v. Mathews, 141 Fla. 307, 193 So. 69 (1940); Dacus v. Blackwell, 90 So.2d 324 (Fla. 1956). The present trustees stress the fact that this is not a family trust but a land trust with numerous unrelated beneficiaries who had limited contact with Flagship as trustee and argue that the beneficiaries had no duty to watch the trustees and that the beneficiaries and the present trustees did not have full awareness of Flagship's negligent action in regard to its attempt to redeem the retained property lost at tax deed sale until after the present trustees were substituted for Flagship on January 1, 1979, which was within four years of the filing of these *916 consolidated actions against Flagship. The trial court determined that under these circumstances the statute of limitations did not begin to run until substitution of the present trustees for Flagship. We agree.
The last point argued by Flagship is that if it had a duty to redeem the retained property from the tax deed sale, and breached that duty and the statute of limitations does not bar these actions then, because Flagship did not act in bad faith or by self dealing, the proper measure of damages is the fair market value of the retained and lost property at the time of the tax deed sale, which was $21,500 for the "660 on 530 Trust" parcel and $48,000 for the "300 on 530 Trust" parcel, and not the measure of damages applied by the trial judge, which was the fair market value of the lost property at the time of trial, $59,000 for the "660 on 530 Trust" and $350,000 for the "300 on 530 Trust" parcel.
The purpose of an award of damages is to make the injured party whole to the extent that it is possible to do so in monetary terms. Fisher v. Miami, 172 So.2d 455 (Fla. 1965). By applying the fair market value of the retained and lost property at the time of trial, the trial judge awarded damages to the beneficial interest holders which placed them in a position very similar to that which they would have been in had the promoters not fraudulently retained the property. The liability of a trustee for losses to a trust is discussed under two sections of the Restatement (Second) of Trusts (1959):
§ 205. Liability in Case of Breach of Trust
If the trustee commits a breach of trust, he is chargeable with
(a) any loss of depreciation in value of the trust estate resulting from the breach of trust; or
(b) any profit made by him through the breach of trust; or
(c) any profit which would have accrued to the trust estate if there had been no breach of trust.
Thus the trustee is liable for losses sustained by the trust which result from the trustee's breach. Section 206 of the Restatement (Second) of Trusts (1959) speaks to the breach of the duty of loyalty:
§ 206. Liability for Breach of Duty of Loyalty
The rule stated in § 205 is applicable where the trustee in breach of trust sells trust property to himself individually, or sells his individual property to himself as trustee, or otherwise violates his duty of loyalty.
The beneficial interest holders are entitled to damages equalling the fair market value of the retained and lost property at the time of trial as that measure charges Flagship with the loss in the value of the trust property resulting from Flagship's breach of its duty to protect from loss, property claimed by the trust. The trial judge's application of the fair market value of the property at the time of trial was therefore proper and we affirm.
AFFIRMED.
COBB, J., and DANIEL, C.W., Associate Judge, concur.
NOTES
[1] Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976).